# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 06-63


SCOTT BENNETT

VERSUS

DAIGRE'S AUTOMOTIVE, INC.


**********


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION DISTRICT # 2
PARISH OF RAPIDES, NO. 02-01205
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE


**********


## ELIZABETH A. PICKETT
## JUDGE


**********


Court composed of John D. Saunders, Glenn B. Gremillion, and Elizabeth A. Pickett, Judges.


**AFFIRMED.**


George A. Flournoy
Flournoy, Doggett & Losavio
P. O. Box 1270
Alexandria, LA 71309-1270
Counsel for Plaintiff/Appellee:
    Scott Bennett

John Hatch Hughes
Allen & Gooch
P. O. Box 3768
Lafayette, LA 70502-3768
Counsel for Defendant/Appellant:
    Daigre's Automotive, Inc.

PICKETT, Judge.

The defendants, Daigre's Automotive, Inc. (Daigre's) and Louisiana Insurance Guaranty Association(LIGA), the successor to Daigre's compensation carrier, Casualty Reciprocal Exchange and Equity Insurance Company (which had been placed into liquidation), appeal a judgment of a workers' compensation judge (WCJ) awarding the claimant, Scott R. Bennett, penalties and attorney's fees under La.R.S. 23:1201(G) for non-payment of Supplemental Earnings Benefits (SEB) and $4,000.00 in attorney's fees. The claimant answered the appeal seeking additional attorney's fees for the work necessitated by this appeal. We affirm the judgment of the WCJ and award the claimant additional attorney's fees of $2,500.00 for the work necessitated by this appeal.

## SUMMARY OF THE PROCEEDINGS BEFORE THE WCJ

The record is fairly sparse, but we have gleaned the following from the pleadings, the minutes and the transcripts of August 11 and November 28, 2005.

The claimant was a longtime employee of Daigre's before his accident on January 23, 2002. There appeared to be no problem in the handling of his claim until Daigre's workers' compensation carrier went into liquidation, and LIGA came into the picture in August 2004. Without filing any motion or seeking approval from the WCJ handling claimant's case, LIGA stopped paying Mr. Bennett's benefits as of January 1, 2005. Several telephone conferences followed, and on August 11, 2005, a hearing was held. At that hearing, the following partial settlement was entered into the record (emphasis ours):

> All claims for penalties as a result of any acts and/or omissions from the date of injury through today's date are settled for Two Thousand Dollars ($2,000.00). All claims for attorney's fees are waived for all acts and omissions from the date of injury through today's date. *There will be a*

1

*resumption of Mr. Bennett's SEB benefits from January 1, 2005 through the present and continuing* with legal interest from the date due on each . . .in the amount of Two Hundred Twenty-four Dollars ($224.00), that being all legal interest on the past-due installments through July 31, 2006. Furthermore, cost will be reimbursed to plaintiff in the total amount of One Thousand Eighty-nine Dollars and Fifty-five Cents ($1,089.55).

On August 31, 2005, a judgment in accordance with the above, dismissing Mr. Bennett's claims for penalties and attorney's fees, was rendered. The judgment was silent as to the emphasized portion of the settlement. Thereafter, LIGA failed to bring Mr. Bennett's SEB up to date. On October 21, 2005, the claimant filed a pleading styled, "Motion for Summary Judgment" seeking to have LIGA comply with the terms of the August 11, 2005 settlement agreement. The motion also prayed for penalties and attorney's fees for its failure to do so.

At the hearing on the claimant's motion, on November 21, 2005, the WCJ recognized that the claimant's motion was improperly captioned and decided to consider it as a motion to enforce the settlement reached on August 11, 2005. After hearing the arguments of counsel, the WCJ entered a judgment in favor of the claimant in accordance with the italicized portion of the August 11, 2005 agreement casting the defendant, Daigre's, with "a 24% penalty on the unpaid supplemental earnings benefits, based on zero earnings, from January 1, 2005 through November 27, 2005, or $3,000, whichever is greater with legal interest from the date of this judgment." The WCJ further awarded the claimant "an attorney fee in the amount of $4,000, together with legal interest from the date of this judgment" and all costs. Said attorney fee and costs were also assessed against Daigre's. This appeal followed.

**LAW AND DISCUSSION**

2

There are no disputed factual issues in this case. The issues before this court can be condensed into the following: 1) Was a compromise reached on August 11, 2005? and 2) Does the record, particularly the transcripts of the August 11 and November 28, 2005, support the judgment rendered by the WCJ rendered December 14, 2005.

The defendants spend much time on appeal arguing that the claimant mis-used summary proceedings and that the WCJ erred in "converting the claimant's Motion for Summary Judgment into a Motion for Sanctions." The law is clear:

> We should construe pleadings expansively, according to our supreme court, and heed Article 865's command to construe all pleadings so as to do substantial justice. *McClelland v. State Nat. Life Ins.*, 94-2123 (La.11/18/94); 646 So.2d 309. As long as the facts constituting a claim are alleged, the party may be granted any relief to which he is entitled under the pleadings and the evidence; the "theory of the case" doctrine, under which a party must select a theory of his case or defense and adhere to it throughout the litigation, has been abolished. *First South Prod. Credit v. Georgia-Pacific*, 585 So.2d 545 (La.1991). Pleadings must be construed reasonably so as to afford litigants their day in court, to arrive at the truth, and to do substantial justice. *Kuebler v. Martin*, 578 So.2d 113 (La.1991).

*Taylor v. Hixson Autoplex of Alexandria, Inc.*, 00-1096, p. 5 (La.App.3 Cir. 3/28/01), 781 So.2d 1282, 1885, *writ not considered*, 01-1539 (La. 9/14/01), 796 So.2d 670. The WCJ did what the law demands—he construed the pleadings "so as to do substantial justice." Accordingly, the defendants' arguments on this issue are without merit.

On appeal, the defendants also argue that the partial settlement read into the record on August 11, 2005, does not support the WCJ's ordering the continuing payment of SEB. They further argue that the WCJ erred in that any motion for sanctions was premature inasmuch as the claimant had failed to prove his entitlement to benefits in the first place.

3

We find that the defendants' arguments on this issue to be without merit. Additionally, we find this case is almost a twin to the recent Louisiana Supreme Court case of *Trahan v. Coca Cola Bottling Co. United, Inc.*, 04-100 (La. 3/2/05), 894 So.2d 1096. In *Trahan*, an injured worker brought a motion to enforce a settlement agreement orally entered into with the defendant in open court on October 21, 2002. That agreement, like the agreement in this case, was a partial settlement of the injured worker's claims. The court in *Trahan* stated: "The first issue presented in this case is whether the parties entered into an enforceable compromise settlement in open court on October 21, 2002." *Id.* at 1102. The court found that the agreement was not an enforceable compromise settlement under La.R.S. 23:1272 because it was not a lump sum settlement of all of the plaintiff's claims. However, this did not end the court's inquiry. The court turned to La.Civ.Code art. 3071 which states (emphasis in second paragraph ours):

> A *transaction* or *compromise* is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
>
> This contract must be either reduced into writing or *recited in open court and capable of being transcribed from the record* of the proceeding. *The agreement recited in open court confers upon each of them the right of judicially enforcing its performance*, although its substance may thereafter be written in a more convenient form.

In *Trahan*, 894 So.2d 1105-06, our supreme court stated:

> Utilizing Article 3071 in this case does not frustrate the stated policy that it is in the best interest of the injured worker to receive benefit payments on a periodic basis. Claimant in this case has merely agreed to compromise outstanding claims from the date of his injury to the date of the agreement. He reserved his rights to all future compensation and may continue to receive weekly benefits.

4

In the case sub judice, the claimant gained more protection than did Mr. Trahan in that the compromise in our case not only brought Mr. Bennett's SEB up to date, but agreed to continue it. *Trahan* continued:

> The parties in this case agreed to put an end to the litigation before the hearing officer and recited the terms of the agreement, which were capable of being transcribed from the record of the proceeding, in open court. Our review of the transcript of the proceeding convinces us that a valid compromise was entered into by the parties on October 21, 2002. The hearing officer accepted and approved the compromise, and her statement that "I will sign off on documents once they're presented" did not serve to make the enforceability of the compromise contingent upon her signature. The Article clearly provides that "[the] agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form." The record is unclear regarding the nature of the documents referred to by the hearing officer, or she may have been contemplating signing a written agreement memorializing the terms recited in open court, which would serve as a more convenient written form, or she may have been contemplating signing a dismissal. In any case, because the requirements for an oral compromise pursuant to La. C.C. art. 3071 were satisfied, it was unnecessary for the hearing officer to sign anything for the agreement to be enforceable. *See Colbert*, 446 So.2d at 1206 (stating that both forms of compromise, whether written or recited in open court, may be judicially enforced).

*Id.* at 1106.

The court went on to conclude:

> A compromise instrument constitutes the law between the parties and must be interpreted in accordance with the intent of the parties. *Ortego v. State, Dept. of Transp. & Dev.*, 96-1322, p. 7 (La.2/25/97), 689 So.2d 1358, 1363. The compromise instrument is governed by the same general rules of construction that are applicable to contracts. *Id.* The general rule of construction is provided by La. C.C. art.2046, which states that "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." Further, a compromise extends only to those matters the parties intended to settle and the scope of the transaction cannot be extended by implication. La. C.C. art. 3073; *Ortego*, 96-1322 at p. 7, 689 So.2d at 1363; *Brown v. Drillers, Inc.*, 93-1019 at p. 7, 630 So.2d at 748. Courts apply this rule of construction in light of the general principle that the instrument must be considered as a whole and in light of attending events and circumstances. *Ortego*,

96-1322 at p. 7, 689 So.2d at 1363; *Brown v. Drillers, Inc.*, 93-1019 at p. 8, 630 So.2d at 748.

The meaning and intent of the parties to a compromise is ordinarily determined from the four corners of the instrument, and extrinsic evidence is inadmissible to explain or to contradict the terms of the instrument. *Ortego*, 96-1322 at p. 7, 689 So.2d at 1363. . . .

. . . .

Having determined that a valid and enforceable compromise was entered into by the parties on October 21, 2002, the next issue we must resolve is whether the compromise constitutes a "final, non-appealable judgment" such that penalties and attorney fees may be awarded pursuant to La. R.S. 23:1201(G).

Our courts of appeal have not necessarily agreed on the proper resolution of this issue. *See, e.g., Sedgwick Claims Mgmt. Serv. Inc. v. Cormier*, 02-0216 (La.App. 3 Cir. 3/26/03), 841 So.2d 1032, *writ denied*, 03-1185 (La.6/20/03), 847 So.2d 1234; *Richard v. Our Lady of Lourdes Reg'l Med. Ctr., Inc.*, 02-0571 (La.App. 3 Cir. 10/30/02), 829 So.2d 1147 (both holding that an oral settlement under La. R.S. 23:1272 is a final, non-appealable judgment under La. R.S. 23:1201(G)); *Daniel v. Wal-Mart Stores, Inc.*, 36,451 (La.App. 2 Cir. 12/11/02), 833 So.2d 1047 (oral recitation of settlement followed by a court order for defendant to prepare a written judgment was not sufficiently clear to warrant the imposition of penalties) and *Kessel v. Hotel Dieu Hosp.*, 02-0896 (La.App. 4 Cir. 10/16/02), 830 So.2d 1057 (penalties begin to run from date joint petition for judgment signed by court), *writ denied*, 02-2770 (La.1/24/03), 836 So.2d 49.

Awards of penalties and attorney fees in workers' compensation cases are essentially penal in nature, and are imposed to deter indifference and undesirable conduct by employers and their insurers toward injured workers. *Williams v. Rush Masonry, Inc.*, 98-2271, pp. 8-9 (La.6/29/99), 737 So.2d 41, 46. While the benefits conferred by the Workers' Compensation Act are to be liberally construed, penal statutes are to be strictly construed. *Id.* at p. 9, 737 So.2d at 46. La. R.S. 23:1201(G) is a penal statute which must be strictly construed. *Smith v. Quarles Drilling Co.*, 04-0179, p. 7 (La.10/29/04), 885 So.2d 562, 566.

La. R.S. 23:1201(G) provides for penalties and attorney fees as follows:

> G. If any award payable under the terms of a final, non-appealable judgment is not paid within thirty days after it becomes due, there shall be added to such award an amount equal to twenty-four percent thereof or one

hundred dollars per day together with reasonable attorney fees, for each calendar day after thirty days it remains unpaid, whichever is greater, which shall be paid at the same time as, and in addition to, such award, unless such nonpayment results from conditions over which the employer had no control. No amount paid as a penalty under this Subsection shall be included in any formula utilized to establish premium rates for workers' compensation insurance. The total one hundred dollar per calendar day penalty provided for in this Subsection shall not exceed three thousand dollars in the aggregate.

Thus, if the compromise entered into by the parties on October 21, 2002, constitutes a "final, non-appealable judgment," then claimant is eligible for an award of penalties and attorney fees, unless defendant's failure to pay within thirty days resulted from conditions over which it had no control.

A compromise has the legal efficacy of a judgment that possesses "a force equal to the authority of things adjudged." La. C.C. art. 3078. *See also Ortego*, 96-1322 at p. 6, 689 So.2d at 1363; *Brown v. Drillers, Inc.*, 93-1019 at p. 5, 630 So.2d at 747. Additionally, "[a]n appeal cannot be taken by a party who confessed judgment in the proceedings in the trial court or who voluntarily and unconditionally acquiesced in the judgment rendered against him." La. C.C.P. art.2085. Although the term "confession" is not defined by the Code of Civil Procedure, the jurisprudence has defined it as "an admission by a party, in pleadings or in evidence, of the validity of his opponent's claim in such a way as to leave no issue to be tried." La. C.C.P. art.2085 cmt. (c).

We find the compromise entered into by the parties constitutes a confession of judgment such that defendant was not entitled to an appeal. By agreeing to pay certain sums to claimant in exchange for ending the pending litigation and reciting the specific terms of the agreement in open court, defendant confessed judgment in the proceeding. Defendant's consent amounted to an admission of the validity of the claim against it. Because defendant confessed judgment, it could not appeal the compromise. We therefore conclude that the compromise entered into by the parties on October 21, 2002, included an award payable and constituted a final, non-appealable judgment for purposes of La. R.S. 23:1201(G).

*Trahan* at 894 So.2d 1106-08.

We have much the same situation in this case as was the case in *Trahan*. The

August 11, 2005 compromise between Mr. Bennett and the defendants constituted

an award payable and non-appealable—the agreed upon penalties *and* the SEB, which was to have been continued from January 1, 2005. When the defendants failed to bring Mr. Bennett up to date within thirty days, they exposed themselves to additional penalties and attorney's fees.

The appellants claim that Mr. Bennett has never proven his injury and his right to SEB. However, when the parties entered into the compromise (stipulation) on August 11, 2005, the appellants forfeited the right to demand such proof. It is well settled that a stipulation operates as a judicial confession, binding on all parties and the court. *Grillette v. Alliance Compressors*, 05-982 (La.App. 3 Cir. 2/1/06), __ So.2d __, citing La.Civ.Code art. 1853 and *Winford v. Conerly Corp.*, 04-1278 (La. 3/11/05), 897 So.2d 560.

Louisiana Revised Statutes 22: 1382(A)(2) states in part (emphasis ours): "The association [LIGA] *shall: Be deemed the insurer* to the extent of its obligation on the covered claims *and* to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent." Louisiana Revised Statutes 22: 1379(3)(d) states (emphasis ours):

> "Covered claim" shall not include any claim based on or arising *from a pre-insolvency obligation* of an insolvent insurer, including but not limited to contractual attorneys' fees and expenses, statutory penalties and attorneys' fees, court costs, interest and bond premiums, or any other expenses *incurred prior to the determination of insolvency*.

Accordingly, if we were left to act without restraint, we would assess all penalties and attorney's fees against LIGA. However, we are bound by the action of our supreme court and the prior action of this court:

> LIGA claims it is immune from penalties and attorney fees. La.R.S. 23:1201(E) and La.R.S. 23:1201.2 are punitive in nature and require strict construction. They apply to only "insurers" and "employers." LIGA is considered an "association." Strict construction

8

dictates that LIGA is an entity not intended to be included within the meaning of the statutes. *Bowens v. General Motors Corporation*, 608 So.2d 999 (La.1992); *Louisiana Insurance Guaranty Association v. Cloud*, 627 So.2d 758 (La.App. 2d Cir.1993). We adhere to this jurisprudential rule reluctantly because the record reveals LIGA *grossly* neglected its duty to ascertain the true status of Pitre's health and ability to work. Although LIGA's neglect is indefensible, we are limited by the directive of *Bowens, supra*, in reversing that portion of the hearing officer's judgment.

*Pitre v. Al Johnson Construction Co.*, 94-290, pp. 6-7 (La.App. 3 Cir. 10/5/94), 651 So.2d 301, 305. As in *Pitre*, LIGA's actions in this case are indefensible. Nevertheless, we are bound the rule of jurisprudence constante and cannot assess penalties and attorney's fees against LIGA. However, Daigre's has no such protection.

Accordingly, for the reasons stated, the judgment of the WCJ is affirmed. We award the claimant additional attorney's fees of $2,500.00 for the work necessitated by this appeal.

**AFFIRMED.**

9